# In the United States Court of Federal Claims

No. 20-1393C
Filed: May 26, 2021

---

**CHAWN J. DAVIS,**

        *Plaintiff,*

**v.**

**UNITED STATES,**

        *Defendant.*

---

*William E. Cassara*, William E. Cassara, P.C., Evans, Georgia for plaintiff.

*Sarah E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

**FUTEY**, *Senior Judge*

This action for wrongful discharge is before the Court on the complaint filed by plaintiff, Chawn J. Davis, against the United States Coast Guard (USCG). Plaintiff's complaint alleges that he should have received a medical discharge in lieu of an honorable discharge characterized as for misconduct. He asserts that because he incurred service-related disabilities while on active duty, he should have been medically retired by reason of physical disability. Plaintiff seeks military back pay and disability retirement benefits for this allegedly improper separation from service.

On February 12, 2021, the government filed the administrative record and a motion for judgment on the administrative record. Plaintiff filed a response to the government's motion on April 6, 2021, and the government filed a reply on April 19, 2021.

In its motion for judgment on the administrative record, the government argues that the decision of the Coast Guard Board for Correction of Military Records (CG BCMR) to uphold the administrative separation for misconduct was supported by substantial evidence and was not arbitrary or capricious.

The matter is now ripe for disposition.

## I.  BACKGROUND

### a.  Factual Background

Plaintiff served on active duty in the United States Coast Guard (USCG) from March 1, 2004 through May 22, 2017 as an Aviation Survival Technician Petty Officer 2nd Class (AST2/E-5) and worked as a Rescue Swimmer. He was honorably discharged on May 22, 2017, with a separation code and narrative reason for separation of misconduct. Specifically, plaintiff was found to have committed two serious offenses: (1) malingering, defined as feigning illness or physical disablement for the purpose of avoiding work, duty or service, 10 U.S.C. § 883; and (2) false official statement, defined as making an official statement, knowing it to be false, with the intent to deceive, 10 U.S.C. § 907. AR10–11, AR209. Both charges arose from plaintiff's conduct during his pursuit of a disability retirement. AR 10–11, AR209. On May 29, 2020, the CG BCMR denied plaintiff's request to change his separation to a medical retirement.

### i.   Medical Issues

Beginning in 2013, plaintiff sought out "sick call" appointments with military doctors for migraines, shoulder pain, wrist pain, elbow pain, knee pain, post-traumatic stress disorder (PTSD), and seizures. AR228–91. Plaintiff also sought medical treatment and diagnoses from private providers for ankle pain, wrist pain, shoulder pain, cervical spine pain, migraine headaches, PTSD, and anxiety. *Id.* On December 12, 2014, an informal Coast Guard Medical Evaluation Board found plaintiff "not fit for duty" and recommended his separation from service. AR55.

On September 21, 2015, an Informal Physical Evaluation Board (IPEB) determined that plaintiff was physically unfit for duty and recommended placing him on the Permanent Disability Retired List (PDRL). The IPEB assigned plaintiff a 70% combined disability rating based on the following findings: Spondylolisthesis (L4-L5) with forward flexion of the thoracolumbar spine 30 degrees or less; Epilepsy (petit-mal) with at least 1 major seizure in the last 2 years or at least 2 minor seizures in the last six months; Osteoarthritis with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups; left-sided cartilage, semilunar, removal of, symptomatic; and right-sided ankle limited range of motion rated analogous to pain. The IPEB determined that plaintiff's disabilities were incurred in the line of duty and were not combat-related. Plaintiff did not accept the IPEB's recommendation and demanded a hearing before a Formal Physical Evaluation Board (FPEB).

Meanwhile, over several months in 2016, plaintiff obtained "temporary medical statuses" from base medical personnel, which limited his physical activity duty requirements for periods of up to thirty days. AR88–92, AR194, AR252–57. Medical examiners at his sick call appointments recommended four-hour workdays, soft shoes, or desk work. *Id.* In other instances, he was sent home for up to three days at a time. AR89, AR91, AR252.

On March 16, 2016, the FPEB convened to determine plaintiff's fitness. The FPEB asked plaintiff about his disabilities. First, the FPEB inquired how injuries to plaintiff's cervical spine impaired his daily life. He testified: "Daily living, it prevents me from driving." AR6–7, AR475 (FPEB Trans. at 36:8–10), AR540–41 (FPEB Trans. at 81:5–82:1). Plaintiff testified that he needed a wheelchair to go long-distances and that he could not do activities that required his shoulders to be above his chest. AR6–7, AR540–41 (FPEB Trans. at 81:5–82:1). Next, the FPEB asked plaintiff to explain the events leading to the onset of his PTSD symptoms. Plaintiff testified

that they were brought about by his "first exposure to live round fire" when he and his fellow helicopter crew members were "shot at multiple times" by drug runners. AR6, AR136, AR517 (FPEB Trans. at 58:4–25). The FPEB then asked about plaintiff's migraines. He testified that his migraines could last up to three days and were completely incapacitating. AR4, AR542 (FPEB Trans. at 79:3–11).

On April 20, 2016, the FPEB determined that plaintiff was physically unfit for duty but decided that his physical disabilities were in fact combat-related. AR156–59. The FPEB recommended that plaintiff be placed on the PDRL with an increased combined disability rating of 90%. *Id.*

Plaintiff again appealed the FPEB's decision, seeking an increase in his disability rating related to his cervical spine and right arm, and a reclassification of a major depressive disorder to a diagnosis of PTSD. AR195. On August 12, 2016, the Physical Review Council concurred with the FPEB's findings concerning the spine and right arm conditions, but noted that "the medical documentation strongly support[ed]" changing plaintiff's diagnosis of PTSD as a temporary condition rated at 50 percent to a diagnosis of Major Depressive Disorder as a permanent condition rated at 50 percent. AR195. Before the Physical Disability Evaluation System ("PDES") process concluded, however, plaintiff's chain of command became aware of a potential malingering case involving plaintiff. AR8.

### ii.   Malingering Investigation

On July 22, 2016, Coast Guard Legal Services Command requested the assistance of the Coast Guard Investigative Service ("CGIS") to surveil plaintiff on suspicion of possible malingering. AR8. Apparently, the investigation was prompted when plaintiff was seen in photos on Facebook without using a cane for support.[1] *Id.* Since 2014, plaintiff had used a cane to walk around while on the Base. *Id.*

On July 29, 2016, after reporting symptoms of PTSD, anxiety, stress, and early stages of a migraine to the Health Services Division on Base, plaintiff was placed on Sick in Quarters (SIQ) leave for three days. *Id.* Also, on July 29, 2016, CGIS conducted surveillance of plaintiff. *Id.* CGIS noted that plaintiff walked up the stairs to his residence without the assistance of a cane, with normal physical motion, and without any labored movements. *Id.* Later, CGIS observed plaintiff walking to his vehicle, unaided by a cane, carrying an infant. *Id.* Plaintiff then drove his vehicle to a nearby beach, where he unloaded items from his vehicle and carried them over his shoulders to the beach. AR9.

On August 1, 2016, plaintiff filed a request through his congressional representative to be placed on Home Awaiting Order Status until the completion of the Coast Guard's PDES process. *Id.* On August 2, 2016, CGIS observed plaintiff walking from his residence to his vehicle and

---

[1] It is unclear from the administrative record whether plaintiff himself shared these photos on social media.

3

mailbox without the use of a cane, unloading a stroller from his vehicle, unfolding it to a functioning position, and later carrying an infant to a pool 0.16 kilometers from his residence. *Id.*

On August 15, 2016, plaintiff reported to the Health Services Division on Base that he was suffering from a possible broken toe, causing pain in his foot and back, and a migraine. *Id.* He was placed on limited duty for seven days and SIQ leave for one day after. *Id.* On the same day, CGIS noted that plaintiff was walking on Base with a cane. *Id.* Later that day, CGIS observed plaintiff exiting his residence while carrying a baby. *Id.* He did not utilize a cane, and he walked approximately 1.3 kilometers around the neighborhood. *Id.*

On August 17, 2016, CGIS observed plaintiff walking on Base using a cane with his right hand and wearing a wristband on his right wrist. AR10. Later that morning, he walked into his residence wearing a green colored flight suit. *Id.* On August 26, 2016, CGIS observed plaintiff lifting miscellaneous items in his garage, including a metal moving dolly with both hands, with "physical ease." *Id.* He did not use a cane or wristband. *Id.*

On September 8, 2016, CGIS interviewed plaintiff. AR67. Plaintiff stated that he could not walk any significant distance – "maybe for only 10 seconds" – without using a cane, wheelchair, or other assistance. AR68. He stated that his wrist would start "throbbing" and his back would "spasm" from filling out a medical form or sitting too long. *Id.* Plaintiff stated that his physical symptoms and capabilities did not differ when he was at home or on Base. *Id.*

Plaintiff told CGIS that he experienced a "fight or flight" response when arriving on Base because of his PTSD. AR67. He explained that being on Base caused him to encounter "triggers" including "flight suits, Coast Guard cutters or small boats, smells, sounds, and visuals." *Id.* CGIS informed plaintiff that he had been observed walking without a cane at home. AR68–69. Plaintiff explained that "the physical therapists and orthopedic surgeon specialists want[ed] him to walk without a wheelchair and cane as much as possible." *Id.* CGIS informed plaintiff that he had been observed at the beach unloading items from his truck. *Id.* Plaintiff responded that he "did not recall being at the beach in months" or unloading anything of very much weight. AR68–69.

Plaintiff stated that the discrepancy in physical activity between being on Base and in his home was due to his comfort with the layout and landscape of his home. AR69. He stated that he understood the perception that his actions and abilities at work and at home differed, but that he was better able to tend to his physical symptoms at home. *Id.* He expressed that he was trying to "get his surgeries and get fixed," and had tried to argue to stay in the Coast Guard, but his doctors "said absolutely not." AR70. Plaintiff stated that he was "not trying to do anything sinister," "hope[d] the command [understood] his situation," and was willing to "do what the command want[ed] him to do." *Id.*

On September 20, 2016, CGIS interviewed one of plaintiff's physicians, a USCG Flight Surgeon. AR72. The physician stated that plaintiff's medical specialists with whom he consulted did not have any planned surgeries for plaintiff. *Id.* He explained that despite plaintiff's documented medical abnormalities, plaintiff had decent function and did not need surgeries. *Id.*

On October 5, 2016, CGIS interviewed one of the two pilots involved in the helicopter mission that plaintiff had recounted as a source of his PTSD symptoms. AR12, AR79, AR517 (FPEB Trans. at 58:4–25). The pilot recalled that the incident involved gunshots being fired from a panga, and she stated that her flight crew was involved in the assistance of a panga sighting. *Id.* She recalled seeing muzzle flashes and stated that the panga appeared to be firing gunshots at the other boat nearby. *Id.* She stated that the panga did not appear to be firing at the Coast Guard Helicopter and that no evasive maneuvering action was taken by the flight crew. *Id.* She stated, "neither pilot felt the crew was in danger." *Id.*

On November 30, 2016, the pilot provided a sworn affidavit in which she stated that the crew saw muzzle flashes but were unable to determine from which vessel the flashes originated. AR13, AR39. Based on her training, she knew that they were shots being fired. *Id.* She stated that while she did not know which other members of the crew observed the gunfire, she communicated her observations to the rest of the crewmembers. *Id.*

### iii.   Administrative Separation

After considering the evidence gathered by CGIS, Plaintiff's chain of command determined that a court martial was not the proper way to address plaintiff's alleged misconduct. Instead, on December 5, 2016, plaintiff's command issued two recommendations that he be involuntarily separated for commission of a serious offense. AR135–38.

On March 15, 2017, plaintiff's Commanding Officer (CO) informed plaintiff that action had been initiated to involuntarily separate plaintiff from service for the Commission of a Serious Offense, specifically, malingering and making false official statements. AR14, AR209–213. According to the Manual for Courts-Martial, these offenses may be punishable by punitive discharge or dishonorable discharge, respectively. AR20. The CO observed that plaintiff's demonstrated abilities varied so substantially between work and home that the difference could not be attributed credibly to physical therapy. AR11–12, AR454. The CO noted that plaintiff had made false statements before the FPEB and in the CGIS interview, including his description of the helicopter incident that was distinguished by the pilot. The notice informed plaintiff that his PDES proceeding for disability separation could continue only if plaintiff was retained by the administrative separation proceeding for misconduct and provided the following options:

(1) You may execute a voluntary extension for at least one year to allow your administrative separation case to be completed, including final action. If you choose this option, I will direct the Servicing Personnel Office to assist you to execute the extension. Physical disability proceedings will continue if you are retained by the administrative separation proceeding. Or,

(2) You may demand to be released from the Coast Guard due to expiration of your enlistment. If you choose this option, you will be issued either an honorable or general discharge based on your military record in your most recent enlistment, pursuant to Article 1.B.2 of reference (a). Because you have a pending PDES case, if you choose this option, you must sign a CG-3307 entry, as described in Article I.B.11.f.(1).(c) of

reference (a), acknowledging that you fully understand the rights and
potential benefits you may forfeit as a result of your demand.

AR15, AR213–14.

On March 20, 2017, after consulting with legal counsel, plaintiff selected the second
option. AR15, AR202–08. Plaintiff submitted a Memorandum in which he elected to waive his
right to appear before an administrative board on the condition that he receive an honorable
discharge. *Id.* Under this election, plaintiff hand-wrote the following: "In making this election, I
do not waive any of my rights under the PDES or BCMR processes. I continue to object to this
administrative separation action as being unlawful and void ab initio. I object to administrative
separation processing and request to be medically retired IAW my PDES case. I do not waive any
rights with regard to this administrative action." *Id.*

The Coast Guard Director of Operational Logistics command evaluated the waiver form,
including plaintiff's written statement. AR138–39. He determined that there was a sufficient basis
to discharge plaintiff for misconduct and that there was no indication that the investigation had
been in "bad faith." *Id.* He recommended that plaintiff should receive an honorable discharge in
exchange for his waiver of his pending misconduct-based administrative separation board. AR139.
Plaintiff was honorably separated on May 22, 2017. AR149.

### iv.   BCMR Proceeding

On November 22, 2017, plaintiff petitioned the BCMR to change his honorable discharge
to a medical discharge and to provide plaintiff with a medical evaluation prior to separation.
AR142–47. On May 29, 2020, the BCMR denied plaintiff's petition to modify his discharge
characterization.[2] AR26–28. In its written opinion, the BCMR reviewed plaintiff's medical
records, including records submitted from private physicians, evidence developed through the
CGIS investigation and at the FPEB hearing, and plaintiff's statements about the extent of his
disabilities. AR6–16. The BCMR summarized applicable law and Coast Guard regulations. AR19–
23. The BCMR noted that "the issue before the Board [was] not whether [plaintiff] sustained
injuries during his service that rendered him fit for duty. The issue [was] whether the CG erred in
deciding that plaintiff had feigned illness for the purpose of avoiding work." AR24.

On the malingering charge, the BCMR concluded that "[t]he record support[ed] a finding
that on at least two occasions, plaintiff feigned illness in order to be placed on SIQ leave." AR25.
The BCMR determined that "the maladies complained of by plaintiff [were] inconsistent with his
behavior demonstrated later." AR24. The BCMR found that a trip to the beach was inconsistent
with plaintiff's reported PTSD symptoms and the incapacitation he experienced from migraines.
AR24. The BCMR also found that if plaintiff had a possible broken toe and back and foot pain, it
would have been unlikely that he could have carried and baby and walked around the neighborhood
without a cane. *Id.*

---

[2] The Court notes that plaintiff awaited the BCMR's decision in his case for approximately two
and a half years.

On the false official statement charge, the BCMR concluded that "[plaintiff] made several statements to the FPEB that were in direct contradiction to his behavior observed by the CGIS." AR25. The BCMR determined that "any knowingly false statements made by [plaintiff] to the FPEB could reasonably be found to be made with the intent to deceive the Coast Guard about his medical condition and to support his request for a medical retirement." *Id.* Specifically, the BCMR recounted the inconsistencies between plaintiff's statements and observed behavior, such as driving despite claiming that his cervical spine injuries prevent him from doing so, walking long distances unassisted, including while carrying a child, despite claiming he needed a wheelchair or cane, and carrying and lifting items, despite claiming he had a narrow range of motion and could not carry things. *Id.*

Finally, the BCMR noted that plaintiff received a Department of Veterans' Affairs (VA) General Examination on August 29, 2016, within twelve months of discharge, which was the functional equivalent of a Coast Guard separation medical evaluation. AR27–28. The BCMR noted also that plaintiff had received a 100 percent disability rating from the VA and was receiving follow-on care. *Id.*

### b.  Procedural Background

On October 14, 2020, plaintiff filed a complaint in this Court. ECF No. 1. On February 12, defendant filed a motion for judgment on the administrative record. ECF No. 8. On March 23, 2021, the Court ordered plaintiff to file a response to the government's motion by April 6, 2021 and to show cause in writing as to why plaintiff had not timely responded. ECF No. 9. On April 6, 2021, plaintiff filed a response to the motion for judgment. ECF No. 11. On April 19, defendant filed a reply. ECF No. 12. On April 29, the case was transferred to the undersigned. ECF No. 13.

## II.    DISCUSSION

### a.  Standard of Review

Once a plaintiff has sought relief from a military correction board, the board's determination binds plaintiff unless he can demonstrate that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003). A board's decision is arbitrary and capricious "if the board fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (2006). "When reviewing the decisions of the [reviewing board] under the arbitrary and capricious standard, the scope of review is extremely narrow." *Champagne v. United States*, 35 Fed. Cl. 198, 208 (1996) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974)).

This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United*

*States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). The Court does not serve as a "super correction board." *Skinner v. United States*, 219 Ct. Cl. 322, 327, 594 F.2d 824 (1979). Therefore, "when substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). "When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board." *Id.* Under this standard, the Court's review is limited to the administrative record before the BCMR. *See Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991).

### b. The BCMR's Decision to Discharge Plaintiff for Misconduct Was Supported by Substantial Evidence

Plaintiff contends that the Coast Guard wrongfully initiated administrative separation proceedings for misconduct to deprive him of his rights under his PDES medical discharge proceedings. ECF No. 1. In his complaint, plaintiff alleges that his "chain of command refused to accept the medical findings of disability, and [that they] engaged in a vindictive campaign to deny [plaintiff] the medical discharge to which he was entitled." ECF No. 1 at 4. Plaintiff asserts that the BCMR failed to adequately consider medical evidence and that "[it] cannot articulate a rational connection between the facts and the decision to deny [plaintiff's] service-connected disability requiring a medical discharge."

Plaintiff's allegations, however, do not directly address the BCMR's basis for upholding plaintiff's discharge. The BCMR considered only the evidence of misconduct underlying his administrative separation from service; plaintiff's medical history and disabilities were considered insofar as they informed the BCMR's understanding of the misconduct charges against plaintiff. Because both malingering and false official statement charges carry a maximum penalty of punitive discharge, the Coast Guard needed to demonstrate that plaintiff committed only one of the offenses by a preponderance of the evidence. AR24. Thus, the sole issue before this Court is whether the BCMR's determination that plaintiff be discharged for misconduct was supported by the record before the BCMR.

The record contains sufficient evidence to support the BCMR's conclusion that the Coast Guard did not err in its finding that plaintiff committed the offenses underlying his separation from service. First, as to malingering, the record shows that on multiple occasions during the investigation, plaintiff reported for duty on Base, received approval for Sick in Quarters leave, and then engaged in activities inconsistent with his reported symptoms. For example, on July 29, 2016, after plaintiff reported PTSD and early migraine symptoms to the Health Services Division on Base, he was placed on Sick in Quarters leave for three days. He had previously testified in PDES proceedings that his migraines were completely incapacitating. Later that day, however, plaintiff vacuumed his vehicle, loaded and unloaded his vehicle, walked up and down stairs several times unassisted, carried his infant, left his home, and drove his vehicle with his family to the beach. AR24, AR61–62. On August 15, 2016, plaintiff used a cane and wore a wristband while on Base and was placed on Sick in Quarters leave due to a possible broken toe, causing foot and back pain and a migraine. Later that day, plaintiff took an approximately 1.3 kilometer walk unassisted, carrying his child. AR24, AR63–64. On August 26, 2016, CGIS observed plaintiff lifting

miscellaneous items in his garage, including a metal moving dolly with both hands, with "physical ease." He did not use a cane or wristband. AR9.

Second, as to the false official statements charge, various inconsistencies between plaintiff's testimony under oath to the FPEB about his symptoms and his observed behavior appear in the record before the BCMR. For example, CGIS observed plaintiff driving even though plaintiff claimed his cervical spine injuries prevented him from doing so. AR6–7, AR475 (FPEB Trans. at 36:8–10). CGIS observed plaintiff walking long distances unassisted, including while carrying a child, despite claiming he required a wheelchair or cane due to debilitating muscle weakness and pain. AR6–7, AR540–41 (FPEB Trans. at 81:5–82:1). CGIS observed plaintiff carrying and lifting items and a child, despite claiming that he had a narrow range of motion and could not lift things. AR7, AR542–43 (FPEB Trans. at 83:5–84:8).

Plaintiff attributed the discrepancy between his physical abilities on Base and at home to his comfort with the layout and landscape of his home. He explained that he was better able to tend to his physical symptoms at home and that he was trying to follow his physicians' orders regarding physical therapy. Also, plaintiff contends that in the heat of an aerial pursuit, such as the one he identifies as a source of his PTSD symptoms, it is reasonable that members of the same mission may have differing recollections of events that took place.

The BCMR considered plaintiff's explanations of these discrepancies but ultimately found that plaintiff's "abilities outside of work [were] so far beyond the scope of his abilities demonstrated at work" that they "could not possibly be related to physical therapy." AR136. To make this conclusion, the BCMR relied upon evidence that plaintiff walked around his residence, his neighborhood, and on stairs without the use of a cane despite claiming that he was unable to stand without a cane or go distances without a wheelchair. He was observed driving despite claiming that he could not due to his cervical spine injury. He was observed doing various activities around the house and going on an excursion to the beach despite claiming that his migraines were completely incapacitating. While members of the same mission may recall events differently and the question of what may lead to development of PTSD is partially subjective, the objective evidence that the BCMR relied upon is sufficient to conclude that plaintiff exaggerated his physical symptoms when describing them to physicians on Base and investigators.

In sum, substantial evidence in the record supports the BCMR's conclusion that the Coast Guard did not err in finding that plaintiff committed misconduct: specifically, malingering and making false official statements. Therefore, the BCMR's decision to uphold his administrative separation on the basis of misconduct is reasonable. In light of the evidence in the record, the board's conclusion is reasonable, and this Court is therefore bound by precedent not to disturb the result.

### c. Plaintiff Has Failed to Show That the BCMR's Decision was Arbitrary or Capricious

Plaintiff has not presented any procedural or legal errors in the BCMR's decision to uphold his administrative separation for misconduct. Plaintiff, instead, argues that the BCMR's decision was arbitrary and capricious because it did not consider medical evidence when it denied plaintiff

a medical discharge. Again, plaintiff misconstrues the nature of the proceedings that led to his discharge.

According to the record, "Coast Guard policy requires the suspension of the disability separation process during an ongoing misconduct-based administrative separation," although command may direct otherwise. AR138. Here, plaintiff's medical discharge proceedings had not yet concluded when CGIS began its investigation into plaintiff for misconduct. AR17. Article 1.B.1.e. of the Military Separations Manual and Article 2.C. of the Physical Disability Evaluation System Manual both state that if a member is being processed for disability while simultaneously being evaluated for an involuntary administrative separation for misconduct, the disability evaluation is suspended. AR26. Therefore, the BCMR's determination that the Coast Guard properly suspended plaintiff's medical discharge proceedings was reasonable.

At the conclusion of the misconduct investigation, plaintiff's chain of command decided against a court martial and presented plaintiff with two options for separation from service. In the first option, plaintiff could have resumed his medical discharge case, but only if he was retained in service after his misconduct separation proceedings were concluded. Also, plaintiff would have had to voluntarily extend his service for at least one year to allow adequate time for both proceedings. In the second option, plaintiff could separate immediately with an honorable or general discharge in exchange for waiving his pending misconduct-based administrative separation case and permanently suspending his medical retirement proceedings.

After consulting legal counsel, plaintiff chose to separate immediately from the Coast Guard, and he signed official paperwork to this effect. Plaintiff attempted to add conditional language asserting that he did not waive his right to a hearing, despite that being a condition of immediate separation. If plaintiff had wanted to pursue his medical retirement case, he could have done so by selecting the first option presented. Instead, he waived his right to resume PDES proceedings by selecting option two. The procedure and options for discharge were laid out clearly in the memorandum plaintiff received. The BCMR therefore was reasonable to conclude that the Coast Guard did not commit an error or injustice in accepting applicant's conditional waiver of his right to an administrative board.

## III.   CONCLUSION

For the above stated reasons, the following is hereby ordered:

1.  Defendant's motion for judgment on the administrative record is **GRANTED**.

2.  Plaintiff's complaint is **DISMISSED**.

The Clerk is directed to enter judgment accordingly. No costs.

It is so **ORDERED**.

s/ Bohdan A. Futey
**Bohdan A. Futey**
**Senior Judge**